[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14570
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00010-WLS

YONG NAM WILSON,
as Administrator of the Estate of Lemuel Keith Wilson,
JESSICA BATES,
as natural guardian and next friend of T.S. Wilson,
LATRICE WILLIAMS,
as natural guardian and next friend of M. Wilson,

Plaintiffs - Appellants,

versus

MATTHEW MILLER,
individually and in his official capacity as a police officer
of the City of Pelham,
NEALIE MCCORMICK,
individually and in his official capacity as Chief of Police
of the City of Pelham,
CITY OF PELHAM,
a municipal corporation of Georgia,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 24, 2016)

Before TJOFLAT, JILL PRYOR, and EDMONDSON, Circuit Judges.


PER CURIAM:


Plaintiffs -- as administrators of the estate of Lemuel Keith Wilson, and as natural guardians of Wilson's two minor children -- appeal the district court's grant of summary judgment in favor of Defendant Officer Matthew Miller in Plaintiffs' 42 U.S.C. § 1983 civil action.  This action is about alleged excessive force in violation of the Fourth Amendment.[1]  No reversible error has been shown; we affirm.

This case arises from the fatal shooting of Wilson.  On 2 March 2012, Sergeant Cook and another officer with the Pelham Police Department responded to a 911 call about a naked man who was seen running through a backyard. Shortly thereafter, Sergeant Cook radioed Officer Miller, an investigator with the

[1] Plaintiffs raise no challenge to the district court's grant of summary judgment in favor of Chief Nealie McCormick, the City of Pelham, and in favor of Officer Miller in his official capacity. These claims are abandoned.  See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

2

Pelham Police Department, for assistance in locating the man and requested that Officer Miller bring the Department's four-wheeler.

When Officer Miller arrived at the scene, the 911 caller told Officer Miller that a man had run naked through her backyard and into the woods behind her house. Given the man's reported behavior, Officer Miller suspected that the man might have been under the influence of drugs or alcohol.

Officer Miller entered the woods on foot to locate the man. Several minutes later, Officer Miller heard someone behind him say "hey." Officer Miller turned around and saw a naked man -- later identified as Wilson -- crouching down about 50 yards away.

Officer Miller asked Wilson if he was okay. Wilson responded immediately by asking Officer Miller whether he had a gun, to which Officer Miller said "yes." Wilson then asked Officer Miller if he wanted to use the gun, and Officer Miller said "no." Wilson then said "well, you're going to have to, because you're going to have to kill me or I'm going to kill you. And that's what I aim to do."

Wilson then stood up from his crouched position and began walking toward Officer Miller with his fists closed. Officer Miller saw that Wilson was holding something in his left hand. Officer Miller could tell that the object was no gun, but thought it could be a small knife.[2]

---

[2] The object in Wilson's hand was, in fact, a roll of over sixty twenty-dollar bills.

3

Officer Miller began talking to Wilson in an effort to calm Wilson down. Officer Miller -- who had been in radio contact with his fellow officers throughout the search -- also began requesting back up and reporting that Wilson had threatened to kill him.[3]

Meanwhile, Wilson continued to approach Officer Miller. Officer Miller took his gun out of its holster and aimed it toward the ground as he started backing away from Wilson. In response to Officer Miller's continued efforts to calm Wilson down, Wilson said "it's too late for that, you've already told them where I'm at, they're coming for me." Then, when Wilson got within six feet of Officer Miller, Wilson raised his arms and made a lunging motion toward Officer Miller. Officer Miller fired his gun, striking Wilson twice in the stomach. Wilson later died of his wounds.

Plaintiffs filed this civil action against Officer Miller individually, alleging that Officer Miller used excessive force, in violation of the Fourth Amendment, when he shot Wilson. In a detailed written order, the district court granted Officer Miller's motion for summary judgment: a motion based on an assertion of qualified immunity.

---

[3] The record contains audio recordings of the 911 calls and radio transmissions made during the course of the incident. We agree with the district court's finding that the audio files confirm portions of Officer Miller's testimony about his encounter with Wilson, including that Wilson threatened to kill Officer Miller. Plaintiffs have also never denied that Wilson expressly threatened to kill Officer Miller.

We review de novo a district court's grant of summary judgment, viewing the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation omitted). To avoid summary judgment based on qualified immunity, Plaintiffs must show both that Officer Miller violated a federal right and that the right was already clearly established -- for the circumstances -- when Officer Miller acted. See id. "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011).

A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. at 2083 (quotations and alterations omitted); see also Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 823 (11th Cir. 1997) (en banc) ("For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable

5

government actors, in the defendant's place, that 'what he is doing' violates federal law.").  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (emphasis added); see also City & County of San Francisco, Ca. v. Sheehan, 135 S. Ct. 1765, 1774 (2015); Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014); Stanton v. Sims, 134 S. Ct. 3, 5 (2013); al-Kidd, 131 S. Ct. at 2084.  "A plaintiff cannot rely on general, conclusory allegations or broad legal truisms" to show that a right is clearly established.  Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) (quotations omitted).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."  See, e.g., Mullenix, 136 S. Ct. at 308 (overruling the denial of qualified immunity); Sheehan, 135 S. Ct. at 1775-76 (overruling the denial of qualified immunity and explaining that "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."); Plumhoff, 134 S. Ct. at 2023 (overruling the denial of qualified immunity and commanding courts "not to define clearly established law at a high level of generality . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."); al-Kidd, 131 S. Ct. at 2084 (overruling the denial of qualified immunity); Anderson v. Creighton, 107 S. Ct.

6

3034, 3039 (1987) (overruling the denial of qualified immunity: assertion of a general constitutional or statutory right is insufficient to defeat qualified immunity because "[i]f the test of 'clearly established law' were to be applied at this level of generality, . . . [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.").  Courts must instead determine "whether the violative nature of <u>particular</u> conduct is clearly established . . . in the light of the specific context of the case, not as a broad general proposition."  <u>Mullenix</u>, 136 S. Ct. at 308 (emphasis in original).

"Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand."  <u>Jean-Baptiste v. Gutierrez</u>, 627 F.3d 816, 821 (11th Cir. 2010) (quotation omitted). No precise or "rigid preconditions" exist for determining when an officer's use of deadly force is excessive.  <u>See Scott v. Harris</u>, 127 S. Ct. 1769, 1777 (2007). Instead, in deciding the merits of a claim of excessive force, the court must in each case determine whether -- given all the facts and circumstances of a particular case -- the force used was "reasonable" under the Fourth Amendment.  <u>Graham v. Connor</u>, 109 S. Ct. 1865, 1871-72 (1989).

"In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of

7

the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009).  We consider, among other things, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 109 S. Ct. at 1872.

We stress that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  And we must allow "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."  Id.  "We are loath to second-guess the decisions made by police officers in the field."  Vaughan v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003).

The evidence, viewed in the light most favorable to Wilson,[4] shows that Officer Miller violated no constitutional right when he shot Wilson; Officer

---

[4] We reject Plaintiffs' contention that the district court failed to view the evidence in the light most favorable to Wilson.  The record demonstrates that the district court construed properly all genuinely disputed material facts in Wilson's favor.  And nothing required the district court to accept as true Plaintiffs' speculative inferences and conclusions about the evidence.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742-43 (11th Cir. 1996) (inferences may be drawn in favor of the nonmoving party only when they are reasonable and "have a real basis in the

8

Miller's conduct was objectively reasonable in the circumstances.  Given Wilson's strange behavior, express threat to kill Officer Miller, possession of a concealed object, and Wilson's continued aggressive movement toward Officer Miller despite Officer Miller's backing away and taking his gun out of its holster, an objective officer in Officer Miller's situation could have believed reasonably that Wilson posed an immediate threat to Officer Miller's safety.  Faced with a "tense, uncertain, and rapidly evolving" situation, Officer Miller made a split-second decision to shoot Wilson to avoid the risk of serious injury.  In the light of these circumstances, we cannot say that Officer Miller's decision was unreasonable in the Fourth Amendment sense.  See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1246 (11th Cir. 2003) (officer's use of deadly force was constitutionally reasonable because the officer could believe reasonably that the suspect posed "an imminent threat of violence to the officer" when the suspect ignored the officer's commands and approached the officer with a stick held above his head).

That we know now that Wilson in fact had no weapon cannot and does not change our conclusion.  The reasonableness of force used is not judged "with 20/20 vision of hindsight."  See Graham, 109 S. Ct. at 1872.  And an officer need not wait until he is attacked physically before determining reasonably that he is in

---

record").  "[A]n inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation."  Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982).

9

imminent danger of serious injury.  Cf. Long v. Slaton, 508 F.3d 576, 583 (11th Cir. 2007) (concluding the use of deadly force was reasonable, even though other less-lethal means of preventing the suspect's escape may have existed, because "the police need not have taken that chance and hoped for the best.").

In addition, we obviously conclude that it was not clearly established -- as a matter of law -- at the time of the shooting in 2012 that Officer Miller (given the circumstances) acted unreasonably in the Fourth Amendment sense.[5]  Thus, Officer Miller is personally entitled to qualified immunity.

Plaintiffs contend that Officer Miller is unentitled to qualified immunity because he failed to satisfy his burden of showing that he was acting within the scope of his discretionary authority.  In particular, Plaintiffs argue that Officer Miller was outside his jurisdiction when he searched for and encountered Wilson.

For purposes of qualified immunity, an official acts within his discretionary authority if he "(a) perform[s] a legitimate job-related function . . . (b) through

---

[5] Plaintiffs' reliance on our decision in Samples on Behalf of Samples v. City of Atlanta, 846 F.2d 1328 (11th Cir. 1988), to show that Officer Miller violated clearly established law is mistaken.

Too many important circumstances present in Samples are absent here.  In Samples, plaintiff was shot five times, including once in the back.  The Court in Samples also focused on the significant size difference between the 16-year old plaintiff and the officer, who outweighed plaintiff by nearly 100 pounds.  No comparable size difference exists here.  Although Wilson -- a grown man -- weighed about 40 pounds less than Officer Miller (145 lbs. v. 185 lbs.), Wilson was also 3 inches taller.  In addition, unlike this case, the plaintiff in Samples made no express verbal threat to kill the officer and no lunging motion toward the officer.  Given these important factual differences, Samples is far from obviously controlling and fails to place the constitutional question at issue in this case "beyond debate" such that Officer Miller -- and every reasonable officer in his position -- would have been on clear notice that the use of a firearm was unconstitutional.

means that [are] within his power to utilize." Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Our inquiry is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Int'l v. James, 157 F.3d 1271, 1282 (11th Cir. 1998).

Officer Miller was clearly performing a legitimate job-related function when he responded to Sergeant Cook's request for assistance in locating Wilson. Even if we assume that Officer Miller was outside his jurisdiction when he located Wilson,[6] Officer Miller was still acting "through means that were within his power to utilize." Under Georgia law, police officers are authorized to make warrantless arrests for offenses committed in the officer's presence, even if the officer is outside his jurisdiction. O.C.G.A. § 17-4-20(a)(2)(A); Taylor v. Waldo, 709 S.E.2d 278, 281 (Ga. Ct. App. 2011); Delong v. Domenici, 610 S.E.2d 695, 698 (Ga. Ct. App. 2005).

When Officer Miller first encountered Wilson, Wilson was committing an offense (public indecency, in violation of O.C.G.A. § 16-6-8) within Officer Miller's presence. Officer Miller was thus authorized by Georgia law to conduct a warrantless arrest. Instead of arresting Wilson, however, Officer Miller acted

---

[6] That the 911 caller's house is just outside Pelham's city limits is undisputed. The record, however, contains no evidence about whether the shooting occurred inside or outside Pelham's city limits.

within his discretion to first investigate the situation, including Wilson's condition. When Wilson threatened immediately to kill Officer Miller and approached Officer Miller in a threatening way, Officer Miller -- still acting within his discretionary authority -- used deadly force to protect himself from what he perceived reasonably to be an imminent threat of serious physical injury.  In the light of the circumstances of this case, Officer Miller was acting inside the scope of his discretionary authority when the shooting occurred.

For these reasons and given the facts of this case, Officer Miller is entitled to summary judgment.

AFFIRMED.